STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-13-03

AMH - Cum - 11/12/2013

✓

CENTRAL MAINE HEALTHCARE
CORP., CENTRAL MAINE MEDICAL
CENTER, DIETER KRECKEL, ALAN
VERRILL, WILLIAM LEE, and
DANIEL TRAFFORD,

           Petitioners/
           Plaintiffs

     v.

BUREAU OF INSURANCE,

           Respondent/
           Defendant

   and

ANTHEM HEALTH PLANS OF
MAINE, INC.,

           Intervenor

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER ON INTERVENOR ANTHEM HEALTH PLANS OF MAINE, INC.'S AND RESPONDENT BUREAU OF INSURANCE'S PARTIAL MOTIONS TO DISMISS

On August 9, 2013, Petitioners Central Maine Healthcare Corp. (CMHC), Central Maine Medical Center, Dieter Kreckel, Alan Verrill, William Lee, and Daniel Trafford filed an Amended Complaint seeking: 1) disclosure of certain documents pursuant to the Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-14 (2012), (Count I); and 2) a declaratory judgment that the Bureau of Insurance's protocol for handling confidential information violates FOAA and is otherwise invalid (Count II). Intervenor Anthem Health Plans of Maine, Inc. (Anthem) and

1

Respondent Bureau of Insurance (the Bureau) move, pursuant to M.R. Civ. P. 12(b)(6), to dismiss the Amended Complaint except as to certain documents that have not yet been disclosed by the Bureau.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from CMHC's complaint and the initial record filed by the parties and are presumed to be true.[1] *See Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 2, 997 A.2d 741; *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 20, 843 A.2d 43. In April of 2013, Anthem began the process of seeking approval of a new qualified health plan that would replace its current individual and small group plans. (Compl. ¶¶ 9-10.) As part of that process, Anthem filed numerous documents with the Bureau that it designated as confidential. (*See* Compl. ¶ 13; R. 3.)

On May 23, 2013, CMHC sent a FOAA request to the Bureau requesting documents related to Anthem's application for certification of a new health plan. (Compl. ¶ 11; R. 1.) On May 31, 2013, the Bureau responded by letter that it had received and was processing the FOAA request and, pursuant to its existing "protocol," would be "withholding certain responsive documents pending resolution of [Anthem's] request that those documents be given confidential treatment." (R. 3.) Also on May 31, 2013, Anthem formally filed its application for approval of two new Access Plans to be used beginning on January 1, 2014. (Compl. ¶ 12.)

The Bureau's "protocol" addresses the conflict between a document filer or applicant's assertion of confidentiality over documents filed with the Bureau and the presumption of public scrutiny for agency records. *See* 1 M.R.S. §§ 401, 408-A. (*See also* R. 66-68 (containing the

---

[1] Because many of the relevant documents in this matter were public records, the parties agreed to and filed an initial record for the Court's consideration. Several of the documents included in the initial record were also attached as exhibits to CMHC's Amended Complaint. For ease of reference, the Court use citations to the initial record for these documents.

Bureau's protocol).) The protocol instructs the filer or applicant how to designate documents as confidential and delineates how the Bureau will resolve requests for documents designated as confidential:

> Should a third party seek access to a document that is subject to your assertion of confidentiality, you will be provided an opportunity to present argument in support of the validity of your assertion as of that time. The requesting party will also be provided an opportunity to present argument in support of the requested access. The Bureau will review the arguments and make a determination as to whether or not it believes the document is available to the third party. Should that determination be adverse to you, you will be provided an opportunity to seek judicial relief before the document is released.

(R. 66, 67.) The protocol is published on the Bureau's website, but has not been adopted as a formal rule.[2] (Compl. ¶20.)

On June 6, 2013, CMHC orally reiterated its May 23 FOAA request to the Bureau, and specifically requested access to the May 31 Anthem filing. (Compl ¶15.) Later that day, the Bureau responded to CMHC's FOAA request in a detailed letter identifying all the documents it was releasing to CMHC with the letter and those documents the Bureau was withholding pending a determination of confidentiality pursuant to the protocol. (Compl. ¶15; R. 4-8.) The Bureau notified Anthem of the FOAA request, and Anthem and CMHC proceeded to follow the protocol regarding CMHC's request through June 19, 2013. (R. 9-23.)

On June 21, 2013, the Bureau concluded its review of documents responsive to CMHC's FOAA request and released some but not all of the requested documents. (R. 24-30.) In subsequent letters dated June 26, July 2, and August 28, the Bureau released to CMHC further documents or provided updated versions of previously released documents. (R. 31-34.) To date, only a handful of documents have not been released to CMHC based upon the Bureau's determination that those documents are not public records.

---

[2] *See Confidential Treatment of Documents: Bureau of Insurance,* MAINE.GOV,
http://www.maine.gov/pfr/insurance/company/confidential_treatment.htm (last updated August 22, 2012).

Meanwhile, on June 6, 2013, the Superintendent of Insurance published a notice regarding Anthem's application for approval of two new health plans that set a public hearing for June 28, 2013, and established a process and deadline for parties wishing to intervene in the matter. (Compl. ¶ 17; R. 35-37.) On June 11, 2013, Petitioners moved to stay the administrative proceeding, asserting that they could not ascertain how the Anthem plans would affect them because the Bureau had not released any information on the plans.[3] (Compl. ¶21; R. 38-42.) The Bureau denied the motion on the following day. (Compl. ¶22; R. 43-48.)

Petitioners filed the instant proceeding on June 13, 2013, in Kennebec County Superior Court as a Rule 80C administrative appeal of the Bureau's refusal to stay consideration of Anthem's application and also asserted independent claims for FOAA violations and declaratory relief. CMHC voluntarily dismissed its administrative appeal on June 21, 2013, and then filed its Amended Complaint on August 9, 2013. The matter was approved for transfer to the Business and Consumer Court on June 27, 2013. The Court heard oral argument on the present motions on October 2, 2013.

## STANDARD OF REVIEW

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). "The complaint is viewed 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quoting *McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295). "The purpose of a complaint

---

[3] The motion was brought on behalf of three unknown parties, i.e., subscribers and doctors who had no notice of the proceedings but may be affected by Anthem's proposed plans. (R. 39.) These same unknown parties were also named as Petitioners when this case was initiated, but they were dropped when the Amended Complaint was filed. This order does not mention them further.

4

in modern notice pleading practice is to provide defendants with fair notice of the claim against them." *Shaw*, 683 A.2d at 503 (quotation marks omitted). "A complaint is properly dismissed when it is beyond doubt that the plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400 (quotation marks omitted).

## DISCUSSION

I.    Count I: FOAA

"The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public." *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857. FOAA mandates the disclosure of public records: "Except as otherwise provided by statute, a person has the right to inspect and copy any public record in accordance with this section within a reasonable time of making the request to inspect or copy the public record." 1 M.R.S. § 408-A. A public record is "any written, printed, or graphic matter . . . that is in the possession or custody of an agency . . . and has been received or prepared for use in connection with the transaction of public or governmental business." 1 M.R.S. § 402(3). FOAA included numerous exceptions from the definition of public record, including those records that are deemed confidential by statute or by evidentiary privilege. *See* 1 M.R.S. § 403(A), (B). A "person aggrieved by a refusal or denial to inspect or copy a record under section 408-A may appeal, within 5 working days of the receipt of the written notice of denial, to any Superior Court within the State." 1 M.R.S. § 409(1).

In its Amended Complaint, CMHC asserts that the Bureau unlawfully withheld public records in response to its FOAA request because the withheld documents are not in fact confidential. (Compl. ¶¶ 26-30.) CMHC also asserts that the Bureau's protocol is in violation of FOAA. (Compl. ¶ 30.) As a remedy, CMHC seeks an order of disclosure for the withheld

5

documents, *see* 1 M.R.S. § 409(1); civil forfeiture in the amount of $500 for the Bureau's willful non-disclosure of the withheld documents, *see* 1 M.R.S. § 410; and reasonable attorney fees and expenses for the Bureau's bad faith refusal to provide public records, *see* 1 M.R.S. § 409(4). (Compl. at 7-8.)

A.    *Standing*

Both the Bureau and Anthem assert that the named Petitioners other than CMHC must be dismissed from the suit for lack of standing because they made no FOAA request and thus have not been injured. *See Mortg. Elec. Regis. Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 7, 2 A.3d 289 (explaining that standing is evidenced by "a particularized injury to the party's property, pecuniary, or personal rights"). CMHC concedes that the other named Petitioners did not make a FOAA request and thus do not have standing to assert a FOAA claim. The Court will accordingly dismiss the claims of those Petitioners with respect to Count I.

B.    *Timeliness*

Anthem asserts that the Court should dismiss CMHC's appeal as to its "first" FOAA request of May 23, 2013, as untimely because CMHC did not appeal within the statutorily mandated five-day time period when it received the Bureau's May 31, 2013, response. *See* 1 M.R.S. § 409(1); *Guy Gannett Publ'g Co. v. Me. Dep't of Pub. Safety*, 555 A.2d 474, 475-76 (Me. 1989). Anthem distinguishes between the written May 23 request and the oral June 6 reiteration of that request.

Viewing the complaint in the light most favorable to CMHC, the Court cannot say that the May 31 response triggered CMHC's appeal period. The Law Court has interpreted FOAA to require a response from a governmental agency within five working days from the request; the failure to respond at all within that time period "is deemed a denial of the request for documents" and triggers the appeal period. *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 680 (Me.

6

1996); *see also* 1 M.R.S. § 409(1). The Law Court has not held, however, that a response from the agency within the 5-day period indicating receipt of the request should also be deemed a denial. *Cf.* 1 M.R.S. § 408-A (providing that a person has the right to inspect public records "within a *reasonable* time of making the request" (emphasis added)). Moreover, such an interpretation could lead to a plethora of cautionary but unnecessary appeals and does not promote efficient use of party, agency or judicial resources.

Further, although the May 31 letter states that the Bureau would be withholding certain documents responsive to the request, the letter does not reveal which documents it planned on withholding. Any appeal by CMHC from this alleged "refusal" to disclose public records may have been unripe because at that time CMHC had no knowledge of which documents were being or would be withheld. The Bureau fully responded by CMHC's request on June 6, 2013. (R. 4.) CMHC's appeal from the June 6, 2013, letter was within the 5-day appeal period of section 409(1) and is thus timely.

Finally, to the extent that Anthem is suggesting that its May 31 application is not responsive to the May 23 request because it had not been filed as of the date of CMHC's request, the court rejects that contention. The May 23 FOAA request specifically sought "[a]ll records in the possession of the Bureau relating to Anthem's application for certification of a Qualified Health Plan since April 1, 2013." (R. 1.) The request plainly encompasses documents in the possession of the Bureau at any time between the request and before the Bureau's response.

C.    *Civil forfeiture remedy*

The Bureau asserts that CMHC cannot assert a violation of 1 M.R.S. § 410 because only the Attorney General can enforce that provision. The Court agrees. Since the Law Court decided *Cook v. Lisbon School Committee*, the law has been clear that only the Attorney General

7

may seek civil forfeiture pursuant to section 410. 682 A.2d at 680; *see also Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 11, 738 A.2d 1239; *Scola v. Town of Sanford*, 1997 ME 119, ¶ 7, 695 A.2d 1194.

CMHC seeks to avoid this result by pointing out that these cases presume the existence of an award of costs as an alternative to civil forfeiture, an opportunity that has been limited since the enactment of 1 M.R.S. § 409(4). *See* P.L. 2009, ch. 240, § 1 (effective June 2, 2009). CMHC misreads *Cook*. The unavailability of civil forfeiture was not based on the availability of costs; the unavailability of forfeiture was based on statutory authority that only the Attorney General may enforce civil violations. *See Cook*, 682 A.2d at 680 (citing 17-A M.R.S.A. § 4-B (Supp. 1995)). The law remains the same today. *See* 17-A M.R.S. § 4-B(1) (2012).

D.    *Mootness*

Finally, the primary challenge of both the Bureau and Anthem is whether CMHC's FOAA claim is moot because the Court cannot grant CMHC any relief. Neither the Bureau nor Anthem challenge CMHC's FOAA claim with respect to records in the Bureau's custody that have yet to be disclosed to CMHC. Instead, both the Bureau and Anthem assert that to the extent CMHC is seeking disclosure of documents that have been produced after the filing of CMHC's claim, CMHC's FOAA action is moot and should be dismissed. The Bureau characterizes CMHC's FOAA challenges primarily as challenges to the process by which the Bureau responded to CMHC's request and the utilization of the protocol in that process. Because that process is now complete, the Bureau asserts that there is no specific relief the Court can order regarding that process. Anthem makes similar arguments.

"A case . . . may become moot, and hence not justiciable, if the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy although the case raised a justiciable controversy at the time the complaint was filed." *Halfway House, Inc. v.*

*City of Portland*, 670 A.2d 1377, 1379-1380 (Me. 1996). Courts only decide "questions of live controversy, and not hypothetical, abstract, or moot questions." *Sevigny v. Home Builders Ass'n of Me., Inc.*, 429 A.2d 197, 201 (Me. 1981). Nevertheless, the Law Court repeatedly has stated that "[a] governmental body cannot moot a claim of violation of [FOAA] by making disclosure long after the original request." *Campbell v. Town of Machias*, 661 A.2d 1133, 1135 (Me. 1995). FOAA "mandates a prompt response from the agency." *Cook*, 682 A.2d at 679.

When CMHC initiated this case, the Bureau had not provided many of the documents requested by CMHC, and thus the case presented a justiciable controversy. At this juncture in the litigation, however, the Bureau has provided to CMHC all but a handful of the documents it sought in its FOAA request. It is true that ordering the disclosure of already disclosed documents would be somewhat superlative, but disclosure is not all that CMHC is seeking. CMHC also asserts that all of the documents requested were not confidential in the first instance and the failure to provide them in a timely manner constitutes a FOAA violation. Moreover, CMHC is seeking attorney fees pursuant to 1 M.R.S. § 409(4), meaning that the court has to decide whether there was a violation that could trigger any entitlement to attorney fees. *See Cook*, 682 A.2d at 680.

Presuming the facts in the Amended Complaint as true, the Court cannot state that it does not state a cause of action with respect to all the documents sought by CMHC, regardless of whether those documents have been already provided. The complaint alleges that all of the application materials sought by CMHC were public records, that the Bureau made no assertion that they were exempt from the definition of public record, that the Bureau withheld the documents because *Anthem* asserted they were confidential, and that the Bureau also withheld production of public records pursuant to a "non-statutory, non-regulatory protocol." (Compl. ¶¶ 13-14, 19-20.) The Amended Complaint also asserts that the refusal to produce non-

9

confidential documents because Anthem designated them as confidential constitutes bad faith. (Compl. ¶¶ 29-30.) The Court cannot say that if proved, these facts would not entitle CMHC to relief. *See Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710; *Cook*, 682 A.2d at 680.

B.    Count II: Declaratory Judgment

Petitioners seek a declaratory judgment that the protocol is contrary to FOAA and that the Bureau cannot deny requests for public documents in reliance on that protocol. (Compl. ¶ 39.) Petitioners assert there is an ongoing controversy regarding the intersection of FOAA and the protocol, and that the protocol is not a valid rule or regulation adopted pursuant to the Administrative Procedures Act, 5 M.R.S. §§ 8001-11008 (2012). (Compl. ¶ 36.)

The Bureau first contends that the claims of Petitioners other than CMHC must be dismissed because they made no request of the Bureau and thus have no standing to sue regarding the protocol. As alleged in the Complaint, the Court agrees. The other named Petitioners are identified in the Complaint, but the Complaint does not reveal any particularized injury suffered by these Petitioners from acts of the Bureau. *See Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 11, 745 A.2d 975. Importantly, the Amended Complaint does not state how the protocol directly affected or aggrieved any Petitioner other than CMHC. An assertion of general injury is not enough to confer standing on these Petitioners. *See Storer v. Dept't of Envtl. Prot.*, 656 A.2d 1191, 1192 (Me. 1995).

As to CMHC's claim for a declaratory judgment, the Court is not persuaded by the Bureau's or Anthem's arguments. CMHC has alleged sufficient facts to make out a claim against the Bureau for a declaratory judgment that the protocol violates FOAA. Moreover, the Administrative Procedures Act specifically permits a party to seek a declaratory judgment to challenge "an agency rule" or "an agency's refusal or failure to adopt a rule where the adoption of a rule is required by law." 5 M.R.S. § 8058 (2012). (*See* Compl. ¶¶ 20, 36.)

10

## CONCLUSION

Based upon the foregoing, the court orders as follows:

1.  The motions filed by the Bureau of Insurance and Anthem Health Plans of Maine to dismiss Count I are:

    a.  GRANTED as to the claim of Petitioners Central Maine Medical Center, Dieter Kreckel, Alan Verrill, William Lee, and Daniel Trafford;

    b.  GRANTED as to the relief of civil violation; and

    c.  DENIED as to the balance of the motion.

2.  The motions filed by the Bureau of Insurance and Anthem Health Plans of Maine to dismiss Count II are:

    a.  GRANTED as to the claim of Petitioners Central Maine Medical Center, Dieter Kreckel, Alan Verrill, William Lee, and Daniel Trafford; and

    b.  DENIED as to the balance of the motion.

Pursuant to M.R. Civ. P. 79(a), the clerk is instructed to incorporate this order into the docket by reference.

Dated Nov. 12, 2013

_____

A.M. Horton
Justice, Maine Business & Consumer Court

Entered on the Docket: 11.12.13
Copies sent via Mail ___ Electronically ✓

11

**Central Maine Healthcare Corporation, et al v. Bureau of Insurance, et al**
**BCD-AP-13-03**


**Central Maine Healthcare Corporation, et al**
        **Petitioners/ Plaintiffs**

      Counsel:           Michael Poulin, Esq.
                                Adam Lee, Esq.
                                Skelton Taintor & Abbott
                                95 Main Street
                                Auburn, ME 04210


**Bureau of Insurance**
        **Respondent/ Defendant**

      Counsel:           Jonathan Bolton, AAG.
                                Thomas Sturtevant, Jr., AAG.
                                Office of the Attorney General
                                6 State House Station
                                Augusta, ME 04333-0006


**Anthem Health Plans of Maine, Inc.**
        **Intervenor**

      Counsel:           Clifford Ruprecht, Esq.
                                  Chris Roach, Esq.
                                  Roach Ruprecht Sanchez & Bischoff, P.C.
                                66 Pearl Street, Suite 200
                                Portland, ME 04101