STATE OF MAINE                                      SUPERIOR COURT
YORK, SS.                                           Civil Action
                                                    Docket No. CV-15-022


MARK TANNER,

             Plaintiff,

      v.                                            **ORDER**

NATIONSTAR MORTGAGE, LLC,

             Defendant.

Plaintiff Mark Tanner brings this action against Nationstar Mortgage, LLC, asserting various claims arising out of Nationstar's handling of a loan modification for the mortgage on his home. Before the court is Nationstar's motion to dismiss the complaint in its entirety.

## I. Facts

In June 2009, Plaintiff Mark Tanner obtained a loan from Bank of America ("BOA") on his primary residence at 365 Bonny Eagle Road in Hollis Center. When Tanner fell behind on mortgage payments, BOA commenced foreclosure proceedings. The parties were scheduled to mediate pursuant to 14 M.R.S. § 6321-A, but BOA failed to participate in good faith and a Report of Noncompliance issued. Nationstar Mortgage, LLC assumed servicing duties of Tanner's loan in June 2013.

On September 15, 2014, Tanner submitted a complete loss mitigation application to Nationstar through its attorneys at Shechtman Halperin Savage, LLP. Upon request, Tanner submitted additional proof of rental income. The trial on Nationstar's foreclosure action occurred soon thereafter on September 18. Tanner appeared pro se. Attorney Marc Berninger appeared on behalf of

1

Nationstar and assured Tanner that they were considering his loss mitigation application. Tanner consented to judgment, which the court accepted, pending Nationstar's payment of a $1,000 fine for noncompliance with the foreclosure diversion program. Tanner followed up with Attorney Berninger, who assured him the loss mitigation application was under review through October 2014. Tanner received no further correspondence regarding the application's status.

On November 26, 2014, Nationstar wrote to the court stating the $1,000 fine had been paid and requested judgment enter immediately. The court entered judgment on December 15, 2014. On December 18, Tanner received a notice (dated December 11) informing him that his loss mitigation application had been denied on the grounds Tanner failed to provide required information. On January 12, 2015, Tanner, through counsel, submitted a qualified written request (QWR) asserting Nationstar improperly denied his application because he had in fact submitted all the required information. Tanner alleges Nationstar generally failed to promptly, diligently, and accurately process his application.

## II. Conclusions

Tanner's complaint alleges the following counts: (1) Violation of 12 C.F.R. § 1024.41 *et. seq.*, (2) Violation of Maine Consumer Credit Code, 9-A M.R.S. § 9-311-A, (3) Negligence, and (4) Intentional and/or Negligent Infliction of Emotional Distress. Nationstar moves to dismiss the statutory claims on the basis that the complaint fails to allege that the violations caused Tanner recoverable damages. Nationstar moves to dismiss the negligence-based claims arguing lenders and servicers do not owe borrowers a duty of care.

On a motion to dismiss under Rule 12(b)(6), the court considers the allegations contained in the complaint as true and admitted. *Richardson v.*

2

*Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400 (citation omitted). The complaint is then viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710. To dismiss for failure to state a claim, the court must be satisfied that it is "beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (citation omitted).

### A. Count One: Violation of 12 C.F.R. § 1024.41 *et. seq.*

In Count I, Tanner alleges Nationstar failed to comply with the Real Estate Settlement Procedures Act ("RESPA") and federal regulations under the Act.[1] Plaintiff alleges Nationstar's handling of his loss mitigation application violated RESPA in two respects: First, Nationstar wrongfully denied his application when it was complete; and second, Nationstar pursued a foreclosure judgment when he was still being reviewed for loss mitigation options. *See* 12 C.F.R. § 1024.41 (prohibiting foreclosure sale if borrower submits a complete loss mitigation application more than 37 days before a sale).

In moving to dismiss, Nationstar does not contest the allegations of RESPA violations, but argues plaintiff has failed to sufficiently allege the violations caused him damages, citing *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015) (concluding borrower's RESPA claim under 12 U.S.C. § 2605 failed because he failed to plead actual damages and made only

---

[1] RESPA provides individual borrowers with a private cause of action to sue for damages and costs caused by violations. 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a).

3

conclusory allegations of damages and emotional distress). The plaintiff in *Kilgore* alleged that he "suffered financial loss and severe mental anguish and emotional distress of facing the loss or possible loss of his home through foreclosure." *Id.*

> Section 2605(f) of RESPA provides:
>
> Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: (1) Individuals. In the case of any action by an individual, an amount equal to the sum of--(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000.

Tanner alleges Nationstar has failed to act diligently, promptly, or timely pursuant to 12 C.F.R. § 1024.41 and these actions "constitute a pattern and practice within the meaning of 12 U.S.C. § 2605(f)." (Compl. ¶ 80.) He substantiates this allegation with three specific examples in other cases where Nationstar committed similar RESPA violations. (Id. ¶ 61.) Tanner next alleges actual damages in that he has lost equity in his home through the accrual of interest and fees and costs associated with the continued delay. (Id. ¶ 63.) Tanner alleges emotional harm stemming from Nationstar's failure to promptly, diligently, and timely consider his application. (Id. ¶ 65.) Lastly, Tanner alleges he missed work and thus has plausible damages for lost wages. (Id. ¶ 66.)

Taking the allegations in the complaint as true, Tanner has more than adequately pleaded damages that were proximately caused by Nationstar's failure to act promptly, diligently, and timely in handling his loss mitigation application, either as to actual damages or "pattern and practice" damages under 15 U.S.C. § 2605(f)(1)(A)-(B). *See Macomber v. Dillman*, 505 A.2d 810, 812-13 (Me.

4

1986) ("All well-pleaded material allegations of a complaint [including proximate causation] are taken as admitted for the purpose of a Rule 12(b)(6) motion for failure to state a claim for which relief may be granted.").

The *Kilgore* case, which Nationstar cites in support of its argument on Count I, is distinguishable.   In that case, the federal district court dismissed the action because it concluded that the plaintiff's allegations were vague and conclusory.   Other federal courts, however, have not applied such a stringent standard for pleading damages under RESPA.[2]

Moreover, the allegations of damages in this case are more specific and concrete, and include lost equity, lost income, and attorney's fees caused by the delay and failure to act upon his application. Under Maine's notice pleading standards, Tanner's complaint has adequately pleaded damages and thus the motion to dismiss Count I will be denied.

### B.   Count Two: Violation of Maine Consumer Credit Code

The Maine Consumer Credit Code requires creditors and mortgage loan originators to comply with RESPA. *See* 9-A M.R.S. § 9-311-A. Nationstar argues that without a cognizable RESPA claim, there is no per se violation of the Maine Consumer Credit Code and thus Count II fails. The success of Nationstar's argument on Count II, therefore, depends entirely on whether Count I is viable. Because Count I survives, the motion to dismiss Count II will also be denied.

---

[2] For example, on the issue of whether emotional distress damages alone are adequate to support such a claim, federal courts are split. *See, e.g., Moore v. Mortg. Elec. Registration Sys.*, 848 F. Supp. 2d 107, 123 (D.N.H. 2012) (observing the Seventh and Eleventh Circuits have held emotional damages adequate under RESPA, while District Courts in California, Florida and New York reached the opposite conclusion).

## C. Count Three: Negligence

Next, Nationstar contends that the negligence claim in Count III must be dismissed because plaintiff has not alleged sufficient facts to give rise to a fiduciary duty, or alternatively because a servicer owes no general duty in tort to a borrower.

### 1. Fiduciary Duty

The complaint alleges that Nationstar "went beyond the typical role of servicer of collecting payments and, as such, Nationstar developed a fiduciary and/or special relationship with Mr. Tanner." (Compl. ¶ 105.) Tanner appears to be alluding to interactions with Shechtman Halperin Savage and with Attorney Berninger in the context of the foreclosure case and submission of the loss mitigation application.

The Law Court has repeatedly held that a general allegation of a fiduciary relationship is not sufficient to establish the existence of such a relationship for pleading purposes. *See, e.g., Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶¶ 20-21, 738 A.2d 839 ("Recitation of those basic elements cannot substitute for an articulation in the complaint of the specific facts of a particular relationship."). The allegations in the complaint focus on plaintiff's subjective reliance on Nationstar, but fail to set forth specific facts regarding Nationstar's conduct or alleging that plaintiff was in a weak or compromised state and Nationstar abused its superior position. *See Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 8, 54 A.3d 710 (allegations of reliance alone are insufficient to articulate facts regarding the placing of trust and confidence in another party to give rise to fiduciary relationship); *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶ 15, 952 A.2d 213 (holding neither mortgagee-mortgagor or lender-borrower

6

relationship, standing alone, gives rise to a fiduciary relationship); *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 12, 762 A.2d 44 (breach of fiduciary duty claim failed because no facts indicating borrower was in a "diminished emotional or physical capacity" at the time of the loan or that the lender abused the relationship).

The complaint does not allege sufficient facts to establish a fiduciary relationship. Tanner must therefore fall back on general tort principles in order to impose a duty on Nationstar and proceed on Count III.

### 2. Duty of Care

A duty owed by a defendant to a putative plaintiff is an essential element of a prima facie negligence case. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 40, 118 A.3d 789. Duty presents "a multi-factored analysis that necessarily evokes policy-based considerations including the just allocation of loss." *Id.* ¶ 9. Whether a duty exists is a question of law. *Camden Nat'l Bank*, 2008 ME 113, ¶ 10, 952 A.2d 213. "A mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer." *Id.* ¶ 11. A recent federal district court decision in Maine extended this rule to servicers. *Fogg v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 45642, *15-16 (D. Me. Apr. 8, 2015) (declining to recognize a duty of care owed by loan servicers to borrower and mortgagors, reasoning the Law Court has rejected such a duty for mortgagees in *Camden National Bank*, and that rule would likely extend to servicers acting on behalf of the mortgagee).

Plaintiff relies on a single California court of appeals case to support his argument that Nationstar owed him a duty of care. *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr. 3d 304, 310 (Cal. App. 2014). Under California law, a

7

duty may be imposed based on a six-factor test first enunciated in *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958) (weighing "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."). *Alvarez* weighed those factors and concluded that by agreeing to review a loan modification application, a lender owed a borrower a duty of care. *Alvarez*, 176 Cal. Rptr. 3d at 310.

With the exception of a single federal district court decision in the Southern District of Mississippi, *Riels v. Bank of Am., N.A.*, No. 2:14-CV-57-KS-MTP, 2015 U.S. Dist. LEXIS 142407, at *10 (S.D. Miss. Oct. 20, 2015), *Alvarez* has only been cited in the state of California and Ninth Circuit. The court in *Riels* declined to follow *Alvarez*, and even among courts in California and the Ninth Circuit there is significant disagreement. *Compare Candy v. Wells Fargo Bank, N.A.*, No. CV 14-09821, 2016 U.S. Dist. LEXIS 48524, at *9 (C.D. Cal. Apr. 11, 2016) (noting split among California courts and federal courts applying California law and ultimately following *Alvarez* to impose a duty), *with Griffin v. Green Tree Servicing, LLC*, No. CV 14-09408, 2015 U.S. Dist. LEXIS 136367, at *50-51 (C.D. Cal. Oct. 1, 2015)(discussing at length the same split among California courts, but ultimately declining to follow *Alvarez*).

There is no Maine authority for the general proposition that by accepting a loss mitigation application, a servicer assumes a duty of care. Persuasive authority militates against finding a duty here. As the federal court in *Fogg* recognized, the Law Court would very likely extend *Camden National Bank* to

8

hold servicers have no general duty under the same reasoning that lenders have no duty. *See Fogg*, 2015 U.S. Dist. LEXIS 45642 at *15-16.

The court therefore concludes that Nationstar did not owe a duty of care to plaintiff. Absent a duty, the negligence claim fails and Count III will be dismissed.

### D. Court Four: Negligent/Intentional Infliction of Emotional Distress

#### 1. Negligent Infliction of Emotional Distress

Absent a fiduciary relationship and or general tort duty imposed upon Nationstar, plaintiff's claim for negligent infliction of emotional distress necessarily fails. *See Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18 ("Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty . . . there is no analogous general duty to avoid negligently causing emotional harm to others."). Plaintiff fails to state a claim for negligent infliction of emotional distress. In order to proceed on Count IV, plaintiff will have to rely on an intentional infliction of emotional distress theory.

#### 2. Intentional Infliction of Emotional Distress

To state a claim for IIED, a plaintiff must establish:

(1) The defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; (2) "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842.

Tanner does not allege Nationstar acted intentionally in causing him emotional distress, but asserts that Nationstar acted recklessly. "A person acts

9

recklessly if she knows or should know that her conduct creates an unreasonable risk of harm to another person and the unreasonableness of her actions exceeds negligence." *Curtis*, 2001 ME 158, ¶ 13, 784 A.2d 18. Plaintiff alleges: "Nationstar engaged, and continues to engage in reckless, extreme and outrageous conduct by continuing to fail to properly and promptly evaluate Mr. Tanner's complete loss mitigation application." (Compl. ¶ 116.)

The Law Court has addressed IIED in the foreclosure context in a factually dissimilar, but nonetheless instructive case. In *Lougee Conservancy v. CitiMortgage, Inc.*, the court held that a plaintiff failed to state a claim for IIED where the defendant bank's subcontractor secured the wrong property after a foreclosure. 2012 ME 103, ¶ 26, 48 A.3d 774. The contractor entered the residence, moved possessions, took photographs, and changed the locks, causing the owners of the home emotional distress. One plaintiff was "upset and anxious and obtained counseling for ten months," the other another felt "anxious, defeated, discouraged, offended, disgusted" and the third plaintiff's "sense of security and isolation at the [property]" was "destroyed." *Id.* ¶ 8. The court affirmed entry of summary judgment on two grounds, holding that the defendant's conduct, while negligent, was not "extreme or outrageous" as a matter of law, and the plaintiffs' emotional distress was not sufficiently severe. *See id.* (concluding plaintiffs' "general feelings of upset and defeat" were not "substantial enough [as a matter of law] to qualify as emotional distress 'so severe that no reasonable person could be expected to endure it'").

Even accepting plaintiff's argument that Nationstar's failure to appropriately handle his loan modification application was extreme and outrageous (a doubtful proposition), plaintiff fails to allege adequately severe

10

emotional distress. Plaintiff alleges he "has suffered emotional harm including prolonged stress, anxiety, self isolation from family and friends, increased marital tensions, and fear of losing his home." (Compl. ¶ 65.) He further alleges family tensions, feelings of inadequacy, weight gain, and sleep loss. (Id.) These emotional and physical tolls, while unpleasant and regrettable, are stresses commonly experienced by homeowners and borrowers facing foreclosure. Such emotional distress would therefore not rise to a level that is "so severe that no reasonable [person] could be expected to endure it." *See Schelling v. Lindell*, 2008 ME 59, ¶ 26, 942 A.2d 1226 ("Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable.")

Thus, the complaint fails to state a cognizable claim for IIED. Count IV will be dismissed.

### III. Order

In accordance with the foregoing, the motion to dismiss the complaint is DENIED as to Counts I and II and GRANTED as to Counts III and IV.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED**

Dated: May 3, 2016

_____
Wayne R. Douglas
Justice, Superior Court

11